MARGARET FARRELL AND ROBERT FARRELL, HER HUS-
BAND, RESPONDENTS, v. MARY WEISMAN, APPEL-
LANT.

Submitted October 16, 1931—Decided February 19, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and CASE.

For the respondents, *William L. Rae.*

For the appellant, *Collins & Corbin* (*Edward A. Markley*
and *James B. Emory,* of counsel).

The opinion of the court was delivered by

CASE, J.   The plaintiffs, wife and husband, were monthly
tenants of the defendant, occupying the second floor of a
building in which there were other tenants.   There was a
common stairway.   On July 4th, 1928, Mrs. Farrell was in-
jured by a fall as she was descending the stairs.   The action
is by Mrs. Farrell for her personal injuries and by Mr. Far-

rell for consequential damages. Verdict went for the plaintiffs. At the beginning of the trial the defendant admitted ownership of the premises and the control and maintenance of the stairway.

Defendant appeals and writes down three points on the brief. Under the first point it is argued that the plaintiff was, as a matter of law, guilty of contributory negligence; that she assumed the risk of the injuries she received in attempting to use the stairway when she knew of its condition; that more than a reasonable time for the landlord to make the repairs had elapsed after the alleged promise to repair and that after the expiration of that reasonable time the plaintiff assumed the risk of the injury she received; wherefore the trial court should have granted either the motion for nonsuit or the motion to direct a verdict in favor of the defendant.

The cause of the plaintiff's fall was a hole in the stair covering. The Farrells had become tenants of the defendant on March 22d, 1928, and then or soon thereafter complaint was made by them, or on their behalf, to the defendant regarding the dilapidated condition of the stair covering. The plaintiff's evidence is that the defendant, through her agent, promised to have the condition rectified "as soon as she gets the chance." Repairs were not made and about June 20th or June 22d Margaret Farrell, as she testifies, again complained to defendant's agent and a new promise was made to repair the defect. It was held by our Court of Errors and Appeals in *Ionin* v. *E. D. & M. Corporation,* 107 *N. J. L.* 145; 151 *Atl. Rep.* 640, that the landlord's promise to repair relieves the tenant of the burden of assuming risk during the time reasonably proper for making repairs. The defective condition of the stair covering was not such as to import inevitable mishap from the use thereof. It did not portend such imminent disaster as would a wall that was leaning and bulging to the extent that clearly it was about to fall. A tenant may not court death or injury by continued exposure to certain catastrophe even on the landlord's assurance that repair will be made. But under the circumstances of the

present case, the defendant having on June 20th or 22d renewed her promise to repair, and the accident happening on July 4th, we think that the reasonableness of the intervening period was for determination by the jury. We cannot say that as a matter of law the plaintiff either assumed the risk or was guilty of contributory negligence.

Under the same point defendant argues that the condition of the stairs at the time of the accident was created by the acts of the plaintiff Robert Farrell in attempting to repair. There is evidence that Robert Farrell had tacked some linoleum over holes in the stair covering, but the record was not such as to require the court, on a motion for nonsuit or direction, to determine as a matter of law that Robert Farrell's action in that respect had caused or contributed to the fall. Neither is the testimony that a part of the rental agreement was that the plaintiffs should take turns with the other tenants in keeping the hallway and stairs clean such proof of an assumption by plaintiffs of control of the stairway as to relieve the defendant as a matter of law of her responsibility—a conclusion emphaizsed by defendant's admission above referred to.

The second point is that the court erroneously refused defendant's sixth request to charge. We find no error in the refusal. It is not for counsel to place in the court's mouth an expression of the court's personal mental reactions, such as "* * * as I recall the testimony * * *," which is what the request undertook to do.

The final point is that the verdict of the jury was illegal and void because of the manner in which it was received, namely, "the refusal by the clerk of the court to take and enter a verdict of disagreement which the jury attempted to render prior to the rendition of the verdict upon which judgment was entered." In the return to a writ of *certiorari*, issued at the instance of the defendant, the clerk of the Hudson County Circuit Court recites that after the jury had retired and the presiding judge had adjourned court and left the court house there was a summons from the jury room and upon inquiry by a constable as to whether the jury had agreed upon its verdict "the jury replied that they were un-

able to agree," that the clerk of the court then informed the jury that since they could not agree he would communicate with the judge and that the jury would have to stay in the jury room until he could communicate with the judge and that he would be unable to communicate with the latter until about six o'clock in the afternoon, the time of the incident being at about five o'clock; and that in fifteen or twenty minutes the jury, having remained closeted in the jury room, again summoned the clerk and announced that they had reached a verdict, whereupon the verdict for the plaintiffs was rendered as shown in the record. We doubt whether this informal recital by the clerk, taken apparently from no source other than his recollection, after a lapse of six months, of what he saw and heard, is such an outbranch of the record as comes within *Corn* v. *Kaplan,* 103 *N. J. L.* 628; but we shall assume that the matter within the return is properly before us. The defendant calls the earlier announcement of a failure to agree a "verdict of disagreement," and relying upon section 160 of the Practice act (an act to regulate the practice of courts of law (Revision of 1903), 3 *Comp. Stat.,* *p.* 4053), and the decisions thereon, contends that it was the duty of the clerk to receive that "verdict" and discharge the jury. Counsel cites no references to support the contention that a failure to agree is a verdict. That is not our conception of the term. Bouvier's Law Dictionary defines a verdict as "the unanimous decision made by a jury and reported to the court on the matters lawfully submitted to them in the course of a trial of a cause." Webster's New International Dictionary gives the definition as "the answer of a jury given to the court concerning any matter of fact in any cause, civil or criminal, committed to their examination and determination; the finding or decision of a jury on the matter legally submitted to them in the course of the trial of a cause." There has been no authority manifested to us whereby the clerk should or could have discharged the jury from the closet on a mere announcement that it was unable to agree. That announcement was not a verdict within the meaning of the statute.

We find no error. The judgment below will be affirmed.